FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 AUG 24  AM 10: 16

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| WEST AMERICAN INSURANCE, COMPANY, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | | CV99-H-0294-S |
| | ) | |
| HOOVER FAMILY MEDICINE, P.C.; MARIANNE BLAKE; JIMMY BLAKE; PATSY LOGAN; and BRANDON LOGAN; | ) | |
| | ) | |
| DEFENDANTS. | ) | |

ENTERED

AUG 2 4 1999

## MEMORANDUM OF DECISION

The Court has before it the June 28, 1999 motion of
plaintiff West American Insurance Company ("West American") for
summary judgment.  Pursuant to the Court's July 1, 1999 order,
the motion was deemed submitted, without oral argument, on July
27, 1999.

## I. Procedural History

The present action for declaratory judgment is related to an
underlying Alabama state court civil action, CV-98-02454,
currently pending in the Circuit Court of Jefferson County.
Plaintiff West American commenced this action for declaratory
judgement on February 9, 1999 by filing a complaint in this Court

26

alleging that plaintiff has no duty under two policies of insurance issued by West American to defend or indemnify defendants Hoover Family Medicine, P.C., Marianne Blake or Jimmy Blake (collectively "the Blakes")[1] in the state court action being prosecuted by Patsy Logan and Brandon Logan (collectively "the Logans").[2]  The Blakes filed an answer and counterclaim with this Court on April 7, 1999; in their counterclaim, the Blakes allege that West American is acting in bad faith in failing to defend and indemnify the Blakes in the underlying state court action.  The Blakes further assert a right to reimbursement for $3,500.00 in expenses incurred in defending the underlying state action.[3]  Plaintiff's June 28, 1999 motion for summary judgment

---

[1]  For the sake of simplicity, both Marianne and Jimmy Blake as well as Hoover Family Medicine, P.C. will be collectively denominated "the Blakes" throughout this memorandum.

[2]  The underlying state court action was filed April 21, 1998 and plaintiffs West American began providing defendants the Blakes with a defense under a reservation of rights on January 8, 1999.  Prior to that time, the Blakes were represented solely by their own counsel.

[3]  The Blakes also filed a third party complaint on June 1, 1999 seeking to implead third party defendants Linda Trigg and Mutual Assurance, Inc., the agent and agency that serviced the Blakes' West American policies.  This Court dismissed the third party complaint with prejudice in its July 1, 1999 order; consequently the claims in the June 1, 1999 third party complaint are no longer before this Court and will not be discussed further.

2

on all claims asserts that West American is not obligated, under

the terms of the insurance policies issued by plaintiff, to

defend or to indemnify the Blakes in the underlying state court

action and that the Blakes are not entitled to reimbursement of

expenses incurred in the initial defense of the state court

action.  The Blakes filed a July 27, 1999 response and brief in

opposition to the plaintiff's motion and, in turn, plaintiff

filed an August 12, 1999 reply memorandum and an August 13, 1999

supplement to reply memorandum.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary

judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment

as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  The party asking for summary judgment always bears the

initial responsibility of informing the court of the basis for

its motion and identifying those portions of the pleadings or

filings which it believes demonstrate the absence of a genuine

issue of material fact.  Id. at 323.  Once the moving party has

met his burden, Rule 56(e) requires the nonmoving party to go

3

beyond the pleadings and by his own affidavits, or by the

depositions, answers to interrogatories, and admissions of file,

designate specific facts showing that there is a genuine issue

for trial.  Id. at 324.

   The substantive law will identify which facts are material

and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  All reasonable doubts about the facts and

all justifiable inferences are resolved in favor of the non-

movant.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th

Cir. 1993).  A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248.  If the evidence is merely colorable,

or is not significantly probative, summary judgment may be

granted.  Id. at 249.

   The method used by the party moving for summary judgment to

discharge its initial burden depends on whether that party bears

the burden of proof on the issue at trial.  See Fitzpatrick, 2

F.3d at 1115-17 (citing United States v. Four Parcels of Real

Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the

moving party bears the burden of proof at trial, then it can only

meet its initial burden on summary judgment by coming forward

with positive evidence demonstrating the absence of a genuine

4

issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-

moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the

movant meets its initial burden by using this second method, the

non-moving party may either point out to the court record

evidence, overlooked or ignored by the movant, sufficient to

withstand a directed verdict, or the non-moving party may come

forward with additional evidence sufficient to withstand a

directed verdict motion at trial based on the alleged evidentiary

deficiency.  However, when responding, the non-movant can no

longer rest on mere allegations, but must set forth evidence of

specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

The parties submitted a June 24, 1999  statement of admitted

and contested facts.  The relevant, stipulated facts contained in

that statement are set forth below.

In 1993, Christina Logan, the daughter of defendant Patsy

Logan and the sister of defendant Brandon Logan, began working

for Hoover Family Medicine, P.C., a professional corporation

having Jimmy Blake as sole shareholder and Marianne Blake as

office administrator.  (See Stipulated Facts ¶¶ 3-5, 9.)   In

1994, Christina Logan began participating in a group life

insurance plan offered to employees of Hoover Family Medicine,

6

P.C. and funded through employee payroll deductions.[4]  (See Stipulated Facts ¶¶ 6-8.)  Christina Logan named Brandon Logan as the primary beneficiary and Patsy Logan as the secondary beneficiary under the group life insurance plan.  (See Stipulated Facts ¶ 9.)  Coverage under the plan terminated prior to Christina Logan's death on March 15, 1998.  (See Stipulated Facts ¶¶ 11, 15.)

On April 21, 1998 the Logans filed a civil action against the Blakes in the Circuit Court of Jefferson County, Alabama.  (See Stipulated Facts ¶¶ 1, 18.)  In the underlying state court action, Patsy Logan claims that, in reliance upon Christina Logan's participation in the group life insurance plan, she decided not to purchase insurance on the life of Christina Logan.  (See Stipulated Facts ¶ 10.)  In addition, the Logans claim that the termination of insurance coverage under the plan was the result of the Blakes' failure to remit premiums under the group life insurance plan and that the Logans did not learn about the termination of coverage until after Christina Logan's death.  (See Stipulated Facts ¶¶ 12, 16.)  Although not included in the June 24, 1999 statement of admitted and contested facts, the

---

[4]  Life insurance coverage under the plan was provided by New York Life.

7

Logans claim in their state court action that payroll deductions
for coverage under the plan continued until the death of
Christina Logan; the Blakes acknowledge some continued deductions
in their June 1, 1999 third party complaint.  (See Logan v.
Hoover Family Med., P.C. Compl. ¶ 17; Third Party Compl. ¶¶ 12-
14.)   The Logans seek both contract and tort damages arising from
the loss of insurance proceeds on the life of Christina Logan and
tort damages for emotional distress resulting from the allegedly
belated revelation of the termination of coverage.  (See
Stipulated Facts ¶ 19.)

In the underlying state action, the Blakes claim that
coverage under the group life insurance plan was terminated at
the request of the insured.  (See Stipulated Facts ¶ 13.)   The
Blakes further claim that Christina Logan was informed of the
cancellation of coverage by the insurance provider.  (See
Stipulated Facts ¶ 14.)   On July 24, 1998 the Blakes notified
West American of the pending state court action.  (See Stipulated
Facts ¶¶ 22.)

Although not in the June 24, 1999 statement of admitted and
contested facts, the Blakes gave West American notice of the
state law action seeking both a defense and indemnification from
West American under two polices of small business liability

8

insurance issued by West American.  (See West Am. Ins. Co. v. Hoover Family Med., P.C. Compl. ¶ 6.)  One policy, Policy BZW (98)50567578, provided business owners' liability protection and the second policy, Policy BXO (98)50567578, provided commercial umbrella liability protection; the policies were in force until 1997.  (See West Am. Ins. Co. v. Hoover Family Med., P.C. Compl. Exs. B & C; Stipulated Facts ¶ 20.)  Currently, West American is providing a defense in the underlying state court action under a reservation of rights.  (See West Am. Ins. Co. v. Hoover Family Med., P.C. Compl. ¶ 7.)  West American now seeks a declaratory judgment that it is not obligated to indemnify or to defend the Blakes.

### IV. Applicable Substantive Law and Analysis

The jurisdiction of this Court is based upon diversity of citizenship under 28 U.S.C. § 1332.  A federal court sitting in diversity is to apply the applicable state law, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), including the choice of law rules of the forum state.  See Klaxon Co. v. Senator Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (extending Erie to include conflict of laws).  Under Alabama law, "[a]ll contracts of insurance, the application for which is taken within this state [Alabama], shall be deemed to have been made within this state and subject to the

9

laws thereof."  Ala. Code § 27-14-22 (1998).  Because the
applications for the two West American policies were taken in
Alabama, the insurance contracts will be deemed to have been made
in Alabama, and under Alabama conflict of laws analysis, Alabama
law will apply to the claims that are the subject of this action.
See American Econ. Ins. Co. v. Thompson, 643 So. 2d 1350, 1354-55
(Ala. 1994); Cincinnati Ins. Co. v. Girod, 570 So. 2d 595, 597
(Ala. 1990) (both applying Alabama choice of law rules to
insurance contracts).

        As noted earlier, plaintiff's complaint seeks a declaratory
judgment that plaintiff is under no duty to defend or to
indemnify the Blakes in the underlying state court action.  The
Blakes counterclaim, alleging a bad faith failure by plaintiff to
defend and to indemnify the Blakes in the underlying state court
action and seeking $3,500.00 in expenses incurred in defending
the underlying state court action prior to West American's
involvement in that case.  The Court will discuss the plaintiff's
and the Blakes' claims in turn.

## 1.  Duties to Defend and to Indemnify

        Because the duty to defend is broader than the duty to
indemnify, the Court will first address West American's
obligation to defend the Blakes in the underlying state court

10

action. See Ladner & Co., Inc v. Southern Guar. Ins. Co., 347
So. 2d 100, 102 (Ala. 1977) ("It is well established that the
insurer's duty to defend is more extensive than its duty to
pay."). See also Universal Underwriters Ins. Co. v. Stokes
Chevrolet, Inc., 990 F.2d 598, 605 (11th Cir. 1993) ("Alabama
holds that an insurer's duty to defend may be broader than its
duty to indemnify."). Under Alabama law, "[a]n insurance
company's duty to defend its insured is determined by the
language of the insurance policy and by the allegations in the
complaint about what gave rise to the cause of action against the
insured." American States Ins. Co. v. Martin, 662 So. 2d 245,
246 (Ala. 1995) (citing American States Ins. Co. v. Cooper, 518
So. 2d 708 (Ala. 1987)). The Court therefore will look to the
language of the policies and to the allegations in the underlying
state court action to determine whether plaintiff West American
has any duty to defend the Blakes in the pending state civil
action.

The two West American insurance policies in question, Policy
BZW (98)50567578 (the business owner's policy) and Policy BXO
(98)50567578 (the commercial umbrella policy), provided coverage
for bodily injury and property damage, advertising injury, and
personal injury. The various legal theories asserted in the

11

underlying state law action (including fraud, misrepresentation, negligence, and breach of contract) present essentially two types of claims: one concerning insurance proceeds under Christina Logan's terminated group life insurance coverage and one concerning mental anguish suffered after learning of the cancellation of the group life insurance coverage.  The state law action also seeks punitive damages based upon the same facts alleged in connection to the insurance and mental anguish claims. On its face, the state court complaint does not make any claims for personal injury, property damage or advertising injury, as those terms are defined in the policies.[5]  (Compare Logan v. Hoover Family Med., P.C. Compl. with the Business Owner's Policy: Businessowners Liability Coverage Form § F. Liability and Medical Expenses Definitions and the Umbrella Policy:   Commercial Umbrella Excess Liability Policy § VI-Definitions.)

The Logans do not allege any damage from personal injury to themselves or from the Blakes' advertising of their business.

_____

[5]  The Court finds the allegations of the state court complaint to be unambiguous and therefore limits its considerations to the face of the complaint.  See Sphere Drake Ins., P.L.C. v. Shoney's Inc., 923 F. Supp. 1481, 1487 (M.D. Ala. 1996).  Cf. Ladner, 347 So. 2d at 103 (stating that when the pleadings are ambiguous, a court may look to additional evidence).

12

Both policies define advertising injury as including personal or trade defamation, privacy rights violations, advertising misappropriation, and copyright or title infringement. (See the Business Owner's Policy: Businessowners Liability Coverage Form § F. Liability and Medical Expenses Definitions, ¶ 1 and the Umbrella Policy: Commercial Umbrella Excess Liability Policy § VI-Definitions, ¶ 1.). The state court complaint does not assert any claim falling within that definition of advertising injury. Similarly, no claim is alleged which falls within the definition of personal injury, which both policies define as any of a laundry list of claims, other than bodily injury, arising from various torts including false arrest or false imprisonment, malicious prosecution, wrongful eviction or wrongful entry, defamation, and violation of the right to privacy. (See the Business Owner's Policy: Businessowners Liability Coverage Form § F. Liability and Medical Expenses Definitions, ¶ 10 and the Umbrella Policy: Commercial Umbrella Excess Liability Policy § VI-Definitions, ¶ 15.)

Nor do the Logans allege any property damage. Under the definitions in both West American policies, property damage is limited to "tangible" property. (See the Business Owner's Policy: Businessowners Liability Coverage Form § F. Liability

13

and Medical Expenses Definitions, ¶ 12 and the Umbrella Policy:
Commercial Umbrella Excess Liability Policy § VI-Definitions, ¶
18.) The Alabama Supreme Court in American States Insurance Co.
v. Martin found that "strictly economic losses like lost profits,
loss of an anticipated benefit of a bargain, and loss of an
investment, do not constitute damage of injury to 'tangible'
property." American States Ins. Co. v. Martin, 662 So. 2d 245,
249 (Ala. 1995) (emphasis added). In the underlying state court
action, the Logans even denominate their loss of insurance
proceeds as loss "of the benefit of the bargain." (Logan v.
Hoover Family Med., P.C. Compl. ¶ 24.) In short, the loss of
insurance proceeds from Christina Logan's group life insurance
does not meet the definition of property damage, because the loss
of the insurance proceeds is strictly an economic loss and not
damage to "tangible" property. See Martin, 662 So. 2d at 249.

Although the Logans' state law claim for emotional distress
does present a claim falling within the basic definition of
bodily injury, an examination of the West American policies shows
that any emotional distress claim by the Logans is not covered by
either West American policy. Plaintiff West American concedes
that emotional distress and mental anguish are bodily injury.
(See Plaintiff's Mot. for Summ. J. at 4.) However, both policies

14

also require that any bodily injury occur during the policy period. (See the Business Owner's: Businessowners Liability Coverage Form § A. Coverages, ¶ 1.b.(1)(b) and the Umbrella Policy: Commercial Umbrella Excess Liability Policy § I-Insuring Agreements, Coverage A, ¶ 1.c.)

In construing almost identical language requiring bodily injury to occur during the policy period, the Alabama Supreme Court has held that mental anguish occurring after the expiration of the insurance policy is not an occurrence within the policy period despite the fact that the incident giving rise to the mental anguish occurs before termination of the policy. See Martin, 662 So. 2d at 250. Here, the parties stipulate to the fact that the Logans "claim that after (but not before) the death of [Christina Logan], Patsy Logan and Brandon Logan began to experience mental anguish and emotional distress." (Stipulated Facts ¶ 17.) Christina Logan died in 1998 but the two West American policies were cancelled in 1997. (Stipulated Facts ¶¶ 5, 20.) Because the Logans did not begin to experience mental anguish or emotional distress until 1998, after the termination of the two West American policies, the Logans' claims for mental anguish and emotional distress are not within the bodily injury

15

coverage of the West American policies.[6] <u>See</u> <u>Martin</u>, 662 So. 2d

at 250.

Plaintiff West American, however, has undertaken a defense

of the Blakes under a reservation of rights and the Blakes argue

that West American should now be estopped from terminating its

defense of them. The Court finds the Blakes' estoppel argument

without merit. The Blakes have not cited nor has this Court

located any Alabama authority that would prevent an insurer that

has begun a defense of an insured under a reservation of rights

from withdrawing that defense following a determination by a

court of competent jurisdiction that no duty to defend is owed.

<u>Cf</u>. <u>Campbell Pipping Contractors, Inc. v. Hess Pipeline Co.</u>, 342

So. 2d 766, 770 (Ala. 1987) (holding that an insurer that has

undertaken a defense <u>without</u> a reservation of right may not later

withdraw that defense) (emphasis added).

Even were estoppel applicable, the Court finds that allowing

West American to withdraw its defense of the Blakes in the

---

[6] The Court notes that even if the mental anguish and
emotional distress had occurred within the policy term, the
claims would still be outside the polices' coverages as falling
within employment-related practices exclusions. (<u>See</u> the
Business Owner's Policy: Businessowners Liability Coverage Form
§ B. Exclusions, ¶ 1.e. <u>and</u> the Umbrella Policy: Commercial
Umbrella Excess Liability Policy § I-Insuring Agreements,
Coverage A, ¶ 2.d.)

underlying state court action would not be inequitable, immoral
or unjust.   See id. (noting that "estoppel is said to be founded
upon principles of equity, morality and justice").   The Blakes
have been represented by their own counsel throughout the
underlying action, the West American-supplied counsel has
provided the Blakes with an attorney suit report and evaluation,
and the Blakes admit that little progress has been made in the
underlying state court action.[7]   (See Defendants' Resp. and Br.
at 2, 4-5.)   Equitable concerns do not, in the present action,
prevent a finding of no duty to defend.

     This Court concludes, after examining the claims set forth
in the underlying state law complaint and the language of the two
West American insurance policies, that West American owes no duty
to defend the Blakes in the underlying state court action.
Because the duty to defend is broader than the duty to indemnify,
Ladner & Co., Inc v. Southern Guar. Ins. Co., 347 So. 2d 100, 102
(Ala. 1977), a finding of no duty to defend based upon lack of
coverage necessarily implies no duty to indemnify.   See American
States Ins. Co. v. Martin, 662 So. 2d 245, 250-51 (Ala. 1995)
(having determined that insurer had no duty to defend, the court

_____

     [7] Lack of progress in the underlying state court action
raises other issues, which are discussed below.

17

found no need to determine whether insurer owed a duty to
indemnify). Because the above discussion clearly indicates that
none of the claims asserted by the Logans in their state court
civil action against the Blakes fall within the coverage of
either West American insurance policy, this Court also concludes
that West American has no duty to indemnify the Blakes in the
underlying state court civil action.

## 2. Bad Faith

The Blakes counterclaim, asserting that West American is
acting in bad faith in derogation of its contractual duties to
defend and to indemnify the Blakes in the underlying state court
action. Under Alabama law, "a bad faith claim will lie for a
failure to provide the benefits contracted for in an insurance
policy." Blackburn v. Fidelity & Deposit Co., 667 So. 2d 661,
667 (Ala. 1995). In general, a bad faith claim requires the
following: (1) proof of an insurance contract and a breach of
that contract, (2) proof of an intentional refusal to pay, (3)
proof of the lack of a legitimate or debatable reason for
refusal, (4) proof of knowledge by the insurer of the lack of a
legitimate reason for refusal, and (5) where appropriate, proof
of the insurer's failure to investigate the existence of a
legitimate reason for refusal. See id. at 667-68. See also

18

National Sec. Fire & Cas. Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982). The Blakes cannot recover on a breach of contract claim as to the duty to indemnify because the Court has already determined that West American is under no duty to pay or to defend any claims arising from the underlying state court action, and because the Blakes cannot recover for breach of contract, their bad faith claim as to the duty to indemnify must fail. See Blackburn, 667 So. 2d at 668 (explaining the directed verdict on the contract claim test); Bowen, 417 So. 2d at 183.

The analysis is slightly different in regard to the bad faith failure to defend claim. First, plaintiff West American is providing the Blakes with a defense in the underlying state court action, albeit under a reservation of rights. Furthermore, even were West American not providing a defense, the Blakes have offered no evidence apart from the allegations contained in their pleadings that West American is acting in bad faith in not providing a defense. The standard for surviving a directed verdict on a bad faith failure to defend claim provides that "the bad faith claim could be submitted to the jury if 'the insurer either intentionally or recklessly failed to properly investigate the claim or subject the results of the investigation to a cognitive evaluation and review.'" Blackburn, 667 So. 2d at 668

(quoting Thomas v. Principal Fin. Group, 566 So. 2d 735, 744 (Ala. 1990)). The Blakes have failed to come forward with any evidence that West American has recklessly or intentionally failed to investigate the claims in this case or has failed to evaluate the results of any investigation. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (stating that to defeat a motion for summary judgment the non-movant must present some evidence beyond the allegations contained in the pleadings).

The Blakes also raise an issue of bad faith stemming from violations of the insurer's enhanced duty under L & S Roofing Supply v. St. Paul Fire & Marine Ins. Co. when providing a defense under a reservation of rights. See L & S Roofing Supply v. St. Paul Fire & Marine Ins. Co., 521 So. 2d 1298, 1303-04 (Ala. 1987). L & S Roofing requires the insurer to meet "an enhanced obligation of good faith toward its insured" when conducting a defense under a reservation of rights. See id. at 1303. This enhanced obligation requires that the insurer meet a number of criteria. The insurer must conduct a thorough investigation, retain competent defense counsel, keep the insured fully informed, and "refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." Id. In

20

addition, insurer-supplied defense counsel owes a duty of undivided loyalty and full disclosure to the insured and not the insurer. Id.

Although the application of L & S Roofing[8] to a claim of bad faith refusal to defend and indemnify is questionable, this Court finds that plaintiff West American and the Blakes' West American-supplied counsel have met the enhanced obligation of L & S Roofing. Even though the underlying state court action has progressed slowly, the claims in that case have been investigated; otherwise defense counsel would not have been able to provide the Blakes with an eleven page attorney suit report and evaluation. In answer to the Blakes' complaint that the underlying state court action has progressed slowly, the Court notes that the Blakes have been represented by their own counsel throughout the lawsuit, even before the involvement of the West American-supplied defense counsel.

As to the second requirement, the Blakes concede that West American has provided competent defense counsel. (See

---

[8] L & S Roofing provides that, absent a breach of the insurer's enhanced obligation, an insured is not entitled to conduct a separate defense with counsel of the insured's choosing at the insurer's expense merely because the insurer has sought to provide a defense under reservation of rights. See L & S Roofing, 521 So. 2d at 1304.

21

Defendants' Resp. and Br. at 5.) As noted, the West American-
supplied defense counsel has kept the Blakes informed regarding
the underlying state court action, providing them with an
attorney suit report and evaluation, which was shared with the
Blakes' corporate counsel. Defendants the Blakes' corporate
counsel avers that the West American-supplied defense counsel has
not kept her informed, (see Affidavit of Angela G. Turner), but
the duty under L & S is to inform the insured. See L & S
Roofing, 521 So. 2d at 1303. Lastly, the Blakes offer no support
for their allegation that plaintiff West American's pursuing an
action for a declaratory judgment while conducting a defense
under a reservation of rights is a violation of the insurer's
obligation to avoid taking actions showing a greater concern for
the insurer's fiscal interests than for the insured's interests.
L & S Roofing itself would allow an insurer to continue providing
a defense under a reservation of rights even when the outcome of
the trial would also determine the existence of coverage under
the insurance policy. See id. See also Pharr v. Federated Guar.
Mut. Ins. Co., 530 So. 2d 808 (Ala. 1988) (declaratory judgment
concerning duties to defend and indemnify and underlying action
tried together).

To summarize, the Blakes, as the non-movants bearing the

22

burden of proof at trial, have failed to set forth evidence

sufficient to withstand a judgment as a matter of law on their

counterclaim for bad faith failure to defend and to indemnify.

Even taking as true all allegations made by the Blakes in

connection to this claim, the Blakes cannot prevail on their

counterclaim.  Accordingly, plaintiff West American is entitled

to summary judgment as a matter of law as to the Blakes' bad

faith counterclaim.

## 3.  Reimbursement of Initial Defense Expenses

Finally, the Blakes counterclaim to recover $3500.00

expended in the initial defense of the underlying state court

action.  Defendants have failed to offer any support, beyond the

bare assertions contained in their pleadings, that they are

entitled to reimbursement of initial defense costs; they have

cited no applicable law nor have they supplied any documentation

of their expenses.  Even taking as true the Blakes' assertion

that they expended $3500.00 in defending the underlying state

court action, they have failed to come forward with any evidence

negating plaintiff West American's assertion that pre-tender

defense costs are not recoverable.  Thus, summary judgment in

favor of plaintiff West American as to the Blakes' counterclaim

for initial, pre-tender defense costs is proper.  See Lujan v.

Defenders of Wildlife, 504 U.S. 555, 561 (1992) (stating that the non-movant, in order to survive summary judgment, may not rest upon the mere allegations in its pleadings).

Under Alabama law, an insurer does have a duty to reimburse the insured for a separate defense undertaken when an actual conflict of interest has arisen between the insured and the insurer providing a defense under a reservation of right. See generally L & S Roofing Supply Co., Inc. v. St. Paul Fire & Marine Ins. Co., 521 So. 2d 1298 (Ala. 1988). However, as discussed above, no violation of the enhanced standard of L & S Roofing has occurred. The Court finds that West American is under no duty to reimburse the Blakes for any defense costs, whether pre-tender or post-tender, incurred by the Blakes in separately defending the underlying state law action.

In conclusion, the Court finds that no material issues of fact remain and that plaintiff West American is entitled to summary judgment as a matter of law in its action seeking a declaratory judgment that West American owes no duty to defend or to indemnify the Blakes. The Court further concludes that West American is entitled to summary judgment as a matter of law as to all counterclaims asserted by the Blakes. A separate final order will be entered.

DONE this 24th day of August, 1999.

SENIOR UNITED STATES DISTRICT JUDGE